T.C. Memo. 2008-246

UNITED STATES TAX COURT

DONALD L. AND EVELYN RUSSELL, ET AL.,[1] Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 4425-05, 4456-05,    Filed October 30, 2008.
            4688-05.

$\underline{\text{Jon J. Jensen}}$, for petitioners.

$\underline{\text{Jack Forsberg}}$, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, $\underline{\text{Judge}}$:  These cases are before the Court
consolidated for purposes of trial, briefing, and opinion.
Donald and Evelyn Russell (the Russells), Loren and Dawn Kopseng

---

[1]Cases of the following petitioners are consolidated
herewith: Loren R. and Dawn Kopseng, docket No. 4456-05; United
Energy Corp., docket No. 4688-05.

(the Kopsengs), and United Energy Corp. separately petitioned the Court for redetermination of the following deficiencies in Federal income tax:

<u>Donald L. & Evelyn Russell, docket No. 4425-05</u>

| <u>TYE</u> | <u>Deficiency</u> |
|---|---|
| 12/31/1997 | $128,414 |

<u>Loren R. & Dawn Kopseng, docket No. 4456-05</u>

| <u>TYE</u> | <u>Deficiency</u> |
|---|---|
| 12/31/1997 | $278,340 |

<u>United Energy Corp., docket No. 4688-05</u>

| <u>TYE</u> | <u>Deficiency</u> |
|---|---|
| 6/30/1998 | $437,698 |

The issue for decision after concessions is whether instruments entitled "notes", "ledger debt", and "short-term debt" constituted "indebtedness of the S corporation to the shareholder" for purposes of determining whether petitioners Donald Russell (Mr. Russell) and Loren Kopseng (Mr. Kopseng) had sufficient basis under section 1366(d)(1)(B) to claim their distributive shares of the loss incurred by Missouri River Royalty Corp.[2]

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references
(continued...)

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts, together with attached exhibits, are incorporated herein by this reference. At the time the Russells and Kopsengs filed their petitions, they resided in North Dakota. At the time United Energy Corp. (UEC) filed its petition, its principal place of business was in North Dakota.

On May 18, 2005, respondent sent petitioners notices of deficiency for the years at issue. Petitioners filed timely petitions with this Court.

I. Members of the UEC Group and Predecessor Entities

A. United Energy Corp.

UEC was incorporated under the law of North Dakota on August 29, 1997. At all times since its incorporation, UEC has used the accrual method of accounting for tax and financial reporting purposes and has had a fiscal year and taxable year ending June 30. At all times from the initial issuance of stock by UEC on September 1, 1997, through June 30, 1998, all of UEC's outstanding stock was owned by Mr. Russell and Mr. Kopseng.

UEC timely filed a Form 1120, U.S. Corporation Income Tax Return, for its initial short taxable year beginning September 1,

_____
²(...continued)
are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

1997, and ending June 30, 1998.  UEC filed its Form 1120 as the common parent of a consolidated group of corporations consisting of itself, Rainbow Gas Co. (RGC), Rainbow Energy Marketing Corp. (REMC), Missouri River Royalty Corp (MRRC), and Energy Leasing Corp. (ELC).

B.   <u>Rainbow Gas Co.</u>

Before 1997 the assets of RGC were owned by a North Dakota limited partnership (RGC Partnership).  As of August 29, 1997, all of the general and limited partnership interests in RGC Partnership were owned by Mr. Russell and Mr. Kopseng.  On August 29, 1997, in a transaction qualifying as a tax-free exchange under section 351(a), all the assets of RGC Partnership were transferred to RGC, a newly formed North Dakota corporation, in exchange for the issuance of 375 shares of RGC stock to Mr. Russell and 625 shares of RGC stock to Mr. Kopseng.  The RGC shares issued to Mr. Russell and Mr. Kopseng constituted all of the outstanding shares of RGC.

C.   <u>Rainbow Energy Marketing Corp.</u>

REMC is a North Dakota corporation.  As of September 1, 1997, REMC had 4,512,205 shares outstanding, of which 1,108,056 were owned by Mr. Russell and 2,701,149 were owned by Mr. Kopseng.

D. <u>Missouri River Royalty Corp.</u>

MRRC is a North Dakota corporation which was incorporated on September 7, 1984.  At all times before September 1, 1997, MRRC was an S corporation.  Effective September 1, 1997, MRRC voluntarily revoked its S corporation election.  MRRC filed a Form 1120S, U.S. Income Tax Return for an S Corporation, for the short taxable year beginning January 1, 1997, and ending August 31, 1997.  At all relevant times before September 1, 1997, MRRC had 30,000 shares outstanding, of which Mr. Russell and Mr. Kopseng each owned 15,000 shares.

II. <u>The Section 351 Transaction</u>

On September 1, 1997, Mr. Russell received 350 shares of UEC stock and Mr. Kopseng received 650 shares of UEC stock as part of a transaction qualifying as a tax-free exchange under section 351(a).  As part of the section 351 transaction, Mr. Russell made a contribution to UEC of 375 shares of RGC stock, 1,108,056 shares of REMC stock, and 15,000 shares of MRRC stock.  Mr. Kopseng made a contribution to UEC of 625 shares of RGC stock, 2,701,149 shares of REMC stock, and 15,000 shares of MRRC stock.

UEC's audited consolidated financial statement for the period ending June 30, 1998, contained the following statement respecting the section 351 transaction:

> In August, 1997 United Energy Corporation (the company) exchanged 1,000 shares of its common stock for 100% of the shares of Rainbow Gas Company and Missouri River Royalty and 85% of the outstanding shares of

Rainbow Energy Marketing Corporation.  This transaction was accounted for under the requirements of interpretation 39 of Accounting Standards Board Opinion #16, whereby the acquisitions were treated as a transfer of shares between companies with common control in a manner similar to a pooling of interest. Accordingly, all assets and liabilities of the merged companies were recognized at historical cost and the historical financial statements of Rainbow Gas Company, Missouri River Royalty Corporation and Rainbow Energy Marketing Corporation became a component of the historical financial statements of the company.

The audited financial statement made no reference to any assumption or contribution of liabilities being part of the section 351 transaction.

In their capacities as the incorporators and directors of UEC, Mr. Russell and Mr. Kopseng executed a Consent to Action Taken in Lieu of Organizational Meeting dated September 3, 1997 (consent).  With respect to the section 351 transaction, the consent stated as follows:

The directors were authorized to issue stock pursuant to the attached Resolution in the amount of 650 shares to Loren R. Kopseng in return for his contribution of shares from Rainbow Gas Company, Missouri River Royalty Corporation, and Rainbow Energy Marketing Corporation, and has [sic] been authorized to issue 350 shares to Donald L. Russell in return for his contribution of shares from Rainbow Gas Company, Missouri River Royalty Corporation, and Rainbow Energy Marketing Corporation.

The consent made no reference to any assumption or contribution of liabilities being part of the section 351 transaction.

In their capacities as the directors and officers of UEC, Mr. Russell and Mr. Kopseng executed a resolution dated September 3, 1997. The resolution stated:

> Loren R. Kopseng has transferred 625 shares of Rainbow Gas Company stock, 2,701,149 shares of Rainbow Energy Marketing Corporation stock, and all shares of Missouri River Royalty Corporation stock to United Energy Corporation. In return for the transfer of these shares, United Energy Corporation is hereby authorized to issue 650 shares of United Energy Corporation's stock to Loren R. Kopseng.
> Donald L. Russell has transferred 375 shares of Rainbow Gas Company stock, 1,108,056 shares of Rainbow Energy Marketing Corporation stock, and all shares of Missouri River Royalty Corporation stock to United Energy Corporation. In return for the transfer of these shares, United Energy Corporation is hereby authorized to issue 350 shares of United Energy Corporation's stock to Donald L. Russell.

The resolution made no reference to any assumption or contribution of liabilities being part of the section 351 transaction.

III. Financial Instruments of the UEC Group

MRRC required capital to purchase and rework oil wells. Petitioners acquired capital for MRRC through a variety of transactions.

A. The BNC Notes

On or about August 16, 1996, BNC National Bank (BNC) lent $1 million to MRRC. MRRC used the proceeds of the loan to pay off certain prior loans that had been incurred to purchase and rework oil wells. In consideration for the loan, MRRC gave BNC a

promissory note for $1 million (MRRC note) and entered into a loan agreement.

The MRRC note bore interest at the Wall Street Journal prime rate plus 2 percent and required 47 monthly payments of $25,552 and a balloon payment of all remaining principal and interest on August 16, 2000.  Mr. Russell and Mr. Kopseng cosigned the MRRC note.  Throughout the life of the loan, interest on the MRRC note was calculated using monthly compounding and an interest rate of 10.25 percent.  At all times from August 16, 1996, through January 3, 1997, the Wall Street Journal prime rate was 8.25 percent.

As of January 3, 1997, the principal balance of the MRRC note was $927,936.  On January 3, 1997, BNC canceled the MRRC note in consideration for (1) a $463,968 promissory note which Mr. Russell cosigned (the MRRC/DR note), and (2) a $463,968 promissory note which Mr. Kopseng cosigned (the MRRC/LK note). Mr. Russell and Mr. Kopseng also indicated that they intended to guarantee the MRRC/DR note and the MRRC/LK note.[3]

The MRRC/DR note and the MRRC/LK note both listed MRRC as the borrower and indicated that they were for the renewal of the MRRC note.  The MRRC/DR note and the MRRC/LK note both bore interest at the Wall Street Journal prime rate plus 2 percent and

_____

[3]Both the MRRC/DR note and the MRRC/LK note state that they are "guarantied with the personal guarantys [sic] of Donald L. Russell and Loren Kopseng dated 1/3/97."

required 44 monthly payments of $12,776 and a balloon payment of the remaining principal and interest on August 16, 2000. Through March 27, 1997, interest on both the MRRC/DR note and the MRRC/LK note was calculated using an interest rate of 10.25 percent. After March 27, 1997, interest was calculated using an interest rate of 10.50 percent. Interest on both the MRRC/DR note and the MRRC/LK note was calculated using monthly compounding. The Wall Street Journal prime rate was 8.25 percent from January 3, 1997, through March 26, 1997, and 8.5 percent from March 27, 1997, through September 29, 1998.

Between January 3 and September 3, 1997, MRRC made 8 monthly payments of $12,776 on the MRRC/DR note and 8 monthly payments of $12,776 on the MRRC/LK note. All monthly payments on the MRRC/DR note and on the MRRC/LK note were applied first to interest and then to principal.

The interest which accrued on the MRRC/DR note and on the MRRC/LK note between January 3 and September 3, 1997, was as follows:

| Interest Accrued Through | MRRC/DR Note | MRRC/LK Note | Total |
|---|---|---|---|
| Sept. 1, 1997 | $30,009 | $30,009 | $60,018 |
| Sept. 3, 1997 | 30,217 | 30,217 | 60,434 |

As of September 1 and September 3, 1997, the principal balances of the MRRC/DR note and the MRRC/LK note were as follows:

| Principal Balance | MRRC/DR Note | MRRC/LK Note |
|---|---|---|
| Sept. 1, 1997 | $389,915 | $389,915 |
| Sept. 3, 1997 | 389,915 | 389,915 |

On September 3, 1997, using a telephone transfer, MRRC paid BNC (1) the $389,915 principal balance of the MRRC/DR note, (2) the $389,915 principal balance of the MRRC/LK note, (3) the accrued interest of $2,042 on the MRRC/DR note, and (4) the accrued interest of $2,042 on the MRRC/LK note.

The $60,434 of interest that was accrued and paid on the MRRC/DR note and MRRC/LK note was reported on the 1998 UEC Form 1120 as an interest expense of MRRC. None of the $60,434 was reported on Mr. Russell's 1997 Form 1040, U.S. Individual Income Tax Return, or Mr. Kopseng's 1997 Form 1040, either as interest income or as an interest expense.

As of September 1 and September 3, 1997, the fair market value of the MRRC/DR note was equal to the MRRC/DR note's principal balance of $389,915. As of September 1, 1997, and as of September 3, 1997, the fair market value of the MRRC/LK note was equal to the MRRC/LK note's principal balance of $389,915.

B.   The Russell and Kopseng Ledger Debt

Before April 5, 1996, Mr. Russell made a series of cash advances to MRRC which MRRC used for working capital (the Russell ledger debt). As of April 5, 1996, the principal balance of these advances totaled $562,705. In MRRC's books, the Russell ledger debt was recorded as a liability in a ledger account

entitled "Notes Payable Russell" (the notes payable Russell account).

On April 5, 1996, MRRC issued a $562,705 note to Mr. Russell for the Russell ledger debt (the Russell ledger debt note). As of September 1, 1997, the principal balance of the Russell ledger debt was $65,527.

Before April 5, 1996, Mr. Kopseng made a series of cash advances to MRRC which MRRC used for working capital (the Kopseng ledger debt). As of April 5, 1996, the principal balance of these advances totaled $611,144. In MRRC's books, the Kopseng ledger debt was recorded as a liability in a ledger account entitled "Notes Payable Kopseng" (the notes payable Kopseng account).

On April 5, 1996, MRRC issued a $611,144 note to Mr. Kopseng for the Kopseng ledger debt (the Kopseng ledger debt note). As of September 1, 1997, the principal balance of the Kopseng ledger debt was $117,438.

The Russell ledger debt and the Kopseng ledger debt were demand obligations. Interest on the Russell ledger debt and the Kopseng ledger debt was calculated using monthly compounding. There was no requirement that interest accruing on the Russell ledger debt and Kopseng ledger debt be paid at least annually.

As of September 1, 1997, the fair market value of the Russell ledger debt was equal to the Russell ledger debt's

principal balance of $65,527. Likewise, the fair market value of the Kopseng ledger debt was equal to the Kopseng ledger debt's principal balance of $117,438.

Respondent concedes that the Russell ledger debt and the Kopseng ledger debt constituted indebtedness of MRRC to Mr. Russell and Mr. Kopseng for purposes of section 1366(d)(1)(B).

C.   The REMC Ledger Debt

REMC lent MRRC $57,000 on April 1, 1996, and $37,000 on April 11, 1996 (REMC ledger debt). MRRC used the REMC ledger debt for working capital. In MRRC's books, the REMC ledger debt was recorded as a liability in a ledger account entitled "Notes Payable Kopseng/Russell Partnership." The REMC ledger debt was a demand obligation. There was no requirement that interest accruing on the REMC ledger debt be paid at least annually.

A note was prepared in connection with the REMC ledger debt (the REMC note). The REMC note stated, in part, that "Effective April 1, 1996, Missouri River Royalty Corporation promises to pay Kopseng/Russell Partnership $94,000.00 at an interest rate of the applicable Federal Rate Table." Interest on the REMC ledger debt was in fact calculated at a rate that varied from the Wall Street Journal Prime Rate plus 1 percent to the Wall Street Journal Prime Rate plus 2 percent. Interest on the REMC ledger debt was calculated using monthly compounding. At all times, the rates used to calculate interest on the REMC ledger debt exceeded the

short-term, monthly-compounding Applicable Federal Rate as then in effect.  There was no requirement that interest accruing on the REMC ledger debt be paid at least annually.

As of September 1, 1997, the principal balance of the REMC ledger debt was $75,750.

On June 30, 1998, an adjusting journal entry to MRRC's books reclassified $22,042 of the $75,750 balance of the REMC ledger debt to the notes payable Russell account and $53,708 of the balance to the notes payable Kopseng account.  The adjusting journal entry allocated the balance of the REMC ledger debt between the notes payable Russell account and the notes payable Kopseng account in proportion to the interests held by Mr. Russell and Mr. Kopseng in REMC at the time the loans were made in April of 1996.

As of September 1, 1997, the fair market value of the REMC ledger debt was equal to the REMC ledger debt's principal balance of $75,750.

D.   The Short-Term Debt

During the period between March 7, 1997, and June 16, 1997, MRRC received a series of loans totaling $1,830,597 (short-term debt) as follows:

| Date | Amount Borrowed |
|------|-----------------|
| Mar. 7, 1997 | $300,500 |
| Mar. 13, 1997 | 236,000 |
| Mar. 14, 1997 | 20,000 |
| Apr. 2, 1997 | 447,750 |
| Apr. 4, 1997 | 8,200 |
| Apr. 29, 1997 | 336,000 |
| May 15, 1997 | 2,500 |
| June 3, 1997 | 455,647 |
| June 16, 1997 | 24,000 |
| Total | 1,830,597 |

MRRC used the proceeds of the short-term debt for working capital.

Between May 13, 1997, and August 27, 1997, MRRC repaid $629,000 of principal on the short-term debt as follows:

| Date | Amount Repaid |
|------|---------------|
| May 13, 1997 | $200,000 |
| July 3, 1997 | 165,000 |
| Aug. 15, 1997 | 90,000 |
| Aug. 25, 1997 | 200,000 |
| Aug. 27, 1997 | 37,000 |
| Total | 692,000 |

No interest was paid on the short-term debt before September 3, 1997.

The loans making up the short-term debt were transferred directly from the checking account of RGC Partnership to the checking account of MRRC. The repayments were transferred directly from the checking account of MRRC to the checking account of RGC Partnership. Before August 31, 1997, the short-term debt was recorded in MRRC's books as a liability in a ledger account entitled "Notes Payable RGC". As of August 31, 1997, an

adjusting journal entry to MRRC's books reclassified $569,298 of the short-term debt to the notes payable Kopseng account and $569,298 to the notes payable Russell account.

With respect to each of the nine loans comprising the short-term debt, four notes were prepared: (1) One from Mr. Russell to RGC Partnership (Russell/RGC notes), (2) one from Mr. Kopseng to RGC Partnership (Kopseng/RGC notes), (3) one from MRRC to Mr. Russell (MRRC/Russell notes), and (4) one from MRRC to Mr. Kopseng (MRRC/Kopseng notes). The face amount of each note was half of the amount transferred from RGC Partnership to MRRC on the date of the respective transfer.

The face amounts of the Russell/RGC notes, the Kopseng/RGC notes, the MRRC/Russell notes, and the MRRC/Kopseng notes (collectively the short-term notes) were set forth as follows:

Short-Term Debt

| Date Lent | Amount |
|---|---|
| March 7, 1997 | $300,500 |
| March 13, 1997 | 236,000 |
| March 14, 1997 | 20,000 |
| April 2, 1997 | 447,750 |
| April 4, 1997 | 8,200 |
| April 29, 1997 | 336,000 |
| May 15, 1997 | 2,500 |
| June 3, 1997 | 455,647 |
| June 16, 1997 | 24,000 |
| Total | 1,830,597 |

Face Amount of Shareholder/RGC Notes

| Russell to RGC | Kopseng to RGC |
|---|---|
| $150,250 | $150,250 |
| 118,000 | 118,000 |
| 10,000 | 10,000 |
| 223,875 | 223,875 |
| 4,100 | 4,100 |
| 168,000 | 168,000 |
| 1,250 | 1,250 |
| 227,823 | 227,823 |
| 12,000 | 12,000 |
| 915,298 | 915,298 |

Face Amount of MRRC/Shareholder Notes

| MRRC to Russell | MRRC to Kopseng |
|---|---|
| $150,250 | $150,250 |
| 118,000 | 118,000 |
| 10,000 | 10,000 |
| 223,875 | 223,875 |
| 4,100 | 4,100 |
| 168,000 | 168,000 |
| 1,250 | 1,250 |
| 227,823 | 227,823 |
| 12,000 | 12,000 |
| 915,298 | 915,298 |

Each of the short-term notes bore an "effective" date which was identical to the date on which the corresponding loan was made to MMRC. Both Mr. Kopseng and Mr. Russell signed each of the short-term notes, either in their individual capacities or on behalf of RGC or MMRC, but none of their signatures were dated. The short-term debt was a demand obligation.

Each short-term note stated that it bore interest at "an interest rate of the applicable Federal Rate Table." However, interest on the short-term debt was calculated at a rate that varied from the Wall Street Journal Prime Rate plus 1 percent to

the Wall Street Journal Prime Rate plus 2 percent. Interest on the short-term debt was calculated using monthly compounding. At all times, the rates used to calculate interest on the short-term debt exceeded the short-term, monthly-compounding Applicable Federal Rate as then in effect. There was no requirement that interest accruing on the short-term debt be paid at least annually.

As of September 1, 1997, and September 3, 1997, the principal balance of, and the accrued interest on, the short-term debt was as follows:

| Date | Interest | Principal |
|------|----------|-----------|
| Sept. 1, 1997 | $61,923 | $1,138,597 |
| Sept. 3, 1997 | 62,578 | 1,138,597 |

On September 3, 1997, the $1,138,597 principal balance of the short-term debt, along with accrued interest thereon of $62,578, was paid by using a $1,201,175 cashier's check from MRRC to RGC. The $1,201,175 payment was reflected in MRRC's books by (1) debiting the notes payable Russell account for $569,298, (2) debiting the notes payable Kopseng account for $569,298, and (3) debiting the loan interest account for $62,578 with the memo notation "Interest paid to Kopseng & Russell for Note." The $1,201,175 payment was reflected in RGC's books by (1) crediting the "Notes Payable Don Russell" ledger account for $569,298, (2) crediting the "Notes Payable Loren Kopseng" ledger account for

$569,298, and (3) crediting the interest income account for $62,578 with the memo notation "Interest on Note Rec. from MRRC."

The $62,578 of accrued interest on the short-term debt was reported on the 1998 UEC Form 1120 as an interest expense of MRRC and interest income of RGC. None of the $62,578 was reported on Mr. Russell's 1997 Form 1040 or Mr. Kopseng's 1997 Form 1040, either as interest income or interest expense.

As of September 1, 1997, and as of September 3, 1997, the fair market value of the short-term debt was equal to the short-term debt's principal balance of $1,138,597.

The MRRC note, the MRRC/DR note, the MRRC/LK note, the Russell ledger debt, the Kopseng ledger debt, the REMC ledger debt, and the short-term debt were not "publicly offered" within the meaning of that term as used in section 1273(b)(1), nor were they property of the type described in section 1273(b)(3).

IV. Russell and Kopseng's Basis in Indebtedness and MRRC Stock

As of the beginning of MRRC's short taxable year ending August 31, 1997, Mr. Russell's basis in his MRRC stock was $150,151, and Mr. Kopseng's basis in his MRRC stock was zero.

The MRRC 1997 Form 1120S reported an ordinary loss of $1,117,540, interest income of $250, and dividend income of $208. Consistent with the MRRC 1997 Form 1120S, the following items from MRRC's taxable year ended August 31, 1997, were reported on Mr. Russell's 1997 return and on Mr. Kopseng's 1997 return.

| Item | Amount |
| --- | --- |
| Ordinary loss | $558,770 |
| Interest income | 125 |
| Dividend income | 104 |

As of the end of MRRC's taxable year ended August 31, 1997: (1) Mr. Russell's basis in the Russell ledger debt was $65,527 less the amount by which his basis in the Russell ledger debt was properly reduced under section 1367(b)(2) on account of items of MRRC for its taxable year ending August 31, 1997, and (2) Mr. Kopseng's basis in the Kopseng ledger debt was $117,438 less the amount by which his basis in the Kopseng ledger debt was properly reduced under section 1367(b)(2) on account of items of MRRC for its taxable year ending August 31, 1997.

OPINION

Petitioners contend that they had bases in certain indebtedness of MRRC[4] sufficient to permit them to deduct their pro rata shares of MRRC's ordinary loss of $1,117,540 for its final, short taxable year ending August 31, 1997. We disagree. For the reasons set forth below, none of the MRRC Debts, save the Russell ledger debt and Kopseng ledger debt, constituted shareholder debt for purposes of section 1366(d)(1)(B). We need not decide whether the burden of proof shifts to respondent under

---

[4]Namely the MRRC/DR note, the MRRC/LK note, the Russell ledger debt, the Kopseng ledger debt, the REMC ledger debt, and the short-term debt (collectively the MRRC Debts).

section 7491(a) because we decide this case on the basis of the preponderance of the evidence.

Section 1366(a) provides that a shareholder of an S corporation shall take into account his pro rata share of the S corporation's items of income, loss, deduction, or credit. However, a shareholder may deduct his share of the S corporation's losses only to the extent of his adjusted basis in his stock of the S corporation, sec. 1366(d)(1)(A), and "the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder", sec. 1366(d)(1)(B). Any S corporation losses so limited may be carried forward indefinitely. Sec. 1366(d)(2).

The jurisprudence in this area has fleshed out certain principles relating to the limitation set forth in section 1366(d)(1)(B) and the situations under which a shareholder acquires basis with respect to indebtedness. See Hitchins v. Commissioner, 103 T.C. 711, 715 (1994); Grojean v. Commissioner, T.C. Memo. 1999-425, affd. 248 F.3d 572 (7th Cir. 2001). First, a shareholder must make an actual economic outlay. Underwood v. Commissioner, 535 F.2d 309 (5th Cir. 1976), affg. 63 T.C. 468 (1975); Perry v. Commissioner, 54 T.C. 1293, 1296 (1970), affd. 27 AFTR 2d 71-1464, 71-2 USTC par. 9502 (8th Cir. 1971).[5] The

---

[5]The economic outlay requirement stems from the concept that an S corporation shareholder should be entitled to basis to
(continued...)

economic outlay must leave the taxpayer "poorer in a material sense" in order for its bona fides to be respected. Perry v. Commissioner, supra at 1296; see also Bergman v. United States, 174 F.3d 928, 933 (8th Cir. 1999)

Second, the S corporation's indebtedness must run directly to the shareholder; an indebtedness to a passthrough entity that advanced the funds and is closely related to the taxpayer does not satisfy the statutory requirements. Frankel v. Commissioner, 61 T.C. 343 (1973), affd. without published opinion 506 F.2d 1051 (3d Cir. 1974); Burnstein v. Commissioner, T.C. Memo. 1984-74. Furthermore, no form of indirect borrowing, be it a guaranty, surety, accommodation, comaking or otherwise, gives rise to indebtedness from the corporation to the shareholders until and unless the shareholders pay part or all of the

---

[5](...continued)
the extent of his investment in the S corporation. S. Rept. 1983, 85th Cong., 2d Sess. 219-220 (1958), 1958-3 C.B. 922, 1141 ("The amount of the net operating loss apportioned to any shareholder * * * is limited under [former] section 1374(c)(2) [the predecessor of sec. 1366(d)(1)] to the adjusted basis of the shareholder's investment in the corporation; that is, to the adjusted basis of the stock in the corporation owned by the shareholder and the adjusted basis of any indebtedness of the corporation to the shareholder."); see also Perry v. Commissioner, 54 T.C. 1293, 1296 (1970) (concluding that the word "investment" indicated an intent to limit a shareholder's basis to that shareholder's "actual economic outlay"), affd. 27 AFTR 2d 71-1464, 71-2 USTC par. 9502 (8th Cir. 1971).

existing obligation.  Before that crucial act, "liability" may exist, but not debt to the shareholders.  Raynor v. Commissioner, 50 T.C. 762, 770-771 (1968).

I.   The MRRC/DR Note and the MRRC/LK Note

Mr. Russell and Mr. Kopseng cosigned and guaranteed the MRRC/DR note and the MRRC/LK note.  However, neither were required to make any payments with respect to the MRRC notes.  In the absence of any discernable economic outlay, Mr. Russell and Mr. Kopseng's cosigning and guaranteeing of the MRRC notes did not give rise to "indebtedness of the S corporation to the shareholder" under section 1366(d)(1)(B).  See Raynor v. Commissioner, supra at 770 (holding that a shareholder's guaranty of a loan to an S corporation, in the absence of actual payments, does not create indebtedness); Keech v. Commissioner, T.C. Memo 1993-71 (holding that a shareholder's co-signing of a loan to an S corporation may not be treated as an equity investment in the corporation absent an economic outlay by the shareholder).

Further, cosigning and guaranteeing the notes did not create an indebtedness running directly from MRRC to Mr. Russell and Mr. Kopseng.  MRRC's only indebtedness ran to BNC.  The mere possibility that MRRC could become obligated to Mr. Russell and Mr. Kopseng at some future time is irrelevant for purposes of determining indebtedness of the S corporation to the shareholder. See Maloof v. Commissioner, 456 F.3d 645 (6th Cir. 2006), affg.

T.C. Memo. 2005-75. Accordingly, Mr. Russell and Mr. Kopseng did not obtain basis in the MRRC notes.

II.  The REMC Ledger Debt

The REMC ledger debt was originally lent to MRRC in April 1996, by REMC, a C corporation owned by Mr. Russell and Mr. Kopseng. A loan to an S corporation by another entity owned by the S corporation's shareholder is not an indebtedness of the S corporation to the shareholder. See, e.g., Frankel v. Commissioner, supra at 350 (holding that loans to an S corporation from a partnership owned by the same shareholders does not constitute indebtedness of the S corporation to the shareholders); Burnstein v. Commissioner, supra (holding that loans between two S corporations owned by the same shareholders do not create a debt running directly to the shareholders). Although the REMC ledger debt was eventually reclassified in MRRC's books on June 30, 1998, as notes payable to Mr. Russell and Mr. Kopseng, the record is devoid of any evidence suggesting that this treatment was intended at the time REMC made the loans. Standing by itself, this adjustment of a journal entry several years after the actual transaction is insufficient to reclassify the source of a loan. See Burnstein v. Commissioner, supra. Because the REMC ledger debt did not run directly to Mr. Russell and Mr. Kopseng, it did not increase their bases in MRRC.

III. <u>The Short-Term Debt</u>

Respondent contends that the short-term debt should be classified as a direct loan from RGC Partnership to MRRC. Petitioners contend that the short-term debt constituted a series of back-to-back loans from RGC Partnership to Mr. Russell and Mr. Kopseng and from Mr. Russell and Mr. Kopseng to MRRC. We agree with respondent.

The only evidence in the record supporting petitioners' characterization consists of (1) the short-term notes themselves and (2) the August 31, 1997, adjusting journal entry to MRRC's books reclassifying the short-term debt. The four short-term notes have little probative value as nothing in the record indicates that they were executed contemporaneously with the nine advances to MRRC. Although each short-term note bears an effective date which is identical to the date on which RGC Partnership made a corresponding advance to MRRC, Mr. Russell's and Mr. Kopseng's signatures on the notes are not themselves dated, and petitioners failed to present evidence indicating when the notes were executed.

Petitioners' reclassification of the short-term debt on MRRC's books is insufficient by itself to prove the loans' origin. The reclassification occurred on the last day of MRRC's final taxable year and only one day before the section 351

transaction.  Petitioners offered no explanation for the timing of the reclassification.  Not being contemporaneous with the actual advances, the adjusting journal entry cannot establish that the short-term debt constituted back-to-back loans at the time the advances were made.  See <u>Burnstein v. Commissioner</u>, T.C. Memo. 1984-74.

Finally, none of the interest paid on the short-term debt was included in gross income or deducted as an expense by Mr. Russell or Mr. Kopseng.  For these reasons, the short-term debt is best characterized as a series of loans from RGC Partnership to MRRC.  The issuance of the short-term debt did not constitute an economic outlay by MRRC's shareholders, and did not create basis in MRRC stock.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155 in docket Nos.</u>

<u>4425-05, 4456-05, and 4688-05</u>.